THE STATE, THE INHABITANTS, &c., OF EATONTOWN, &c., PROSECUTORS, v. THE INHABITANTS, &c., OF SHREWS-BURY.

1. To gain a legal settlement under the first clause of section 1 of the Poor act (*Rev.*, *p.* 834), the pauper must have been seized of a freehold estate of the value of $130, and have dwelt thereon, or in the township in which the estate was situate, for one continuous year.

2. The statute does not require the continuous actual presence of the party, but will be satisfied by an unbroken residence on the estate or in the township.   The continuity of such "dwelling" will not be broken by absences for business or pleasure which are temporary and accompanied with a continued intent to return when the purpose of the absence has been accomplished.

On *certiorari* to the Monmouth Sessions.

Argued at June Term, 1886, before Justices SCUDDER and MAGIE.

For the prosecutors, *James Steen.*

For the defendants, *John S. Applegate* and *F. W. Hope.*

The opinion of the court was delivered by

MAGIE, J.   The writ in this case brings up an order for the removal of a pauper to the township of Eatontown, upon an adjudication that his legal settlement was in that township.   The order was originally made by a justice of the peace, and, upon appeal, affirmed by the Sessions.   That court has sent up a finding of the facts which they adjudge to be established by the evidence before them.   It appears thereby that it was established by the evidence that the pauper had, prior to 1880, become seized of a freehold estate in Eatontown, of the value of $130.

The prosecutor has properly confined his argument to the first reason.   The facts found by the court below limit the discussion to the question raised by that reason, which is whether the pauper dwelt upon the estate or in the township in which the estate lay, for one full year, and so obtained a legal settlement under the first clause of section 1 of the Poor act.   *Rev.*, *p.* 834.

The facts found by the Sessions, from which they deduced the conclusion that the pauper had dwelt on said estate or in said township for one full year, are the following, viz.: that he built a shanty thereon in 1880, and until 1884 worked out by the day or month in Eatontown and other townships; that while working out he generally ate and slept where employed, but would sometimes provide his meals from, and sometimes would sleep at, the shanty; that while out of employment he made his home at the shanty, and it was the only home he had, and that when he left to go out to such work it was always with the intention to return thereto when his employment ceased; that between 1880 and 1884 he worked in Eatontown more than one year, but not for one year continuously, but did not, during that time, actually dwell in said shanty or the township for any one year continuously.

The contention of prosecutor is that *dwelling*, in the sense used in this statute, implies actual presence, which, to produce

a legal settlement, must continue without interruption for one full year.

That the words " one full year " will only be satisfied by a dwelling for the full space of one year continuously and without interruption, I have no doubt.

The only question is over the meaning of the word " dwell." In my judgment it is not to be restricted in meaning to actual presence.   Such is not the meaning attributed to it in common parlance or by the lexicographers.   To dwell is " to reside, to inhabit, to have a fixed place of residence," &c.   *Worcester's Dict.* • One's dwelling-place is his residence—his usual place of abode.   It does not cease to be such because of temporary absences, whether for pleasure or for business, provided there exist and continue an intent to return to the abode as a dwelling-place.

There have been various English statutes, giving legal settlement to a pauper after a certain period of continuous residence in a parish, and rendering a pauper irremovable from a parish in which he had resided for a certain period. These acts completely resemble the act now before us in the requirement of a continuity of residence.   In construing these acts it has been always held that the continuity of residence will not be broken by mere temporary absences, even for considerable times, if accompanied by an intent to retain the residence and to return to it when the purpose of the absence is accomplished.   *Queen* v. *St. Leonard,* 1 *Q. B.* 21 ; *Queen* v. *Glossop,* 1 *Q. B.* 227 ; *Queen* v. *Abingdon,* 5 *Q. B.* 406 ; *Queen* v. *St. Ives,* 7 *Q. B.* 467 ; *Queen* v. *Worcester,* 9 *Q. B.* 340 ; *Overseers of Manchester* v. *Guardians, &c.,* 16 *Q. B.* 723.

Under this view of the meaning of our statute, I think we cannot find error in the result reached below.   For although the court report that they found that the pauper did not actually dwell in his shanty or in the township of Eatontown for any one year continuously, the finding in that respect must be taken to refer to a continuous presence.   For the whole finding must be construed together, and since it appears

thereby that the pauper had a dwelling-place on his own land, that his absences from it were for the purpose of engaging in work, and were entered upon with an intent to return to his dwelling-place when his employment ceased, it is entirely clear that it must be inferred that the pauper dwelt there for more than a full year, within the meaning of the act.

The proceedings below must be affirmed, with costs.

49   191
52   124

49   191
60   262

49   191
63   506

49   191
67   175