SHUTE, *Adm'r, v.* SARGENT *& a.*

When a husband has forfeited his marital rights by misbehavior, the wife may acquire a separate domicile for all purposes.

BILL OF INTERPLEADER, by the administrator with the will annexed of Sarah A. P. Sargent, against her husband and legatees under her will.

The will was made in 1885, at which time the testatrix was domiciled with her husband in Massachusetts, and the husband expressed in writing on the back of the will consent to its provisions. In 1888 he abandoned her without cause, and procured her ejection by legal process from the house in which they had been living. She removed to Rockingham county in this state, and lived there till her death in 1889, and her domicile was there if she could legally have a domicile apart from her husband. The husband retained a domicile in Massachusetts.

The will was approved and allowed by the probate court of Rockingham county on petition of one of the legatee defendants, with notice to the other defendants, and without objection from any one. On the same day the husband filed with the probate court a revocation of his assent to the will, together with his waiver of its provisions and claim of his distributive share under the statute.

The Public Statutes of Massachusetts, *c.* 147, *ss.* 1 and 6, and the reported decisions of Massachusetts, were made a part of the case.

*Henry A. Shute*, for the plaintiff.

*Arthur O. Fuller*, for the defendant Sargent.

*Charles H. Knight*, for the defendant legatees.

BLODGETT, J. The maxim that the domicile of the wife follows that of her husband " results from the general principle that a person who is under the power and authority of another possesses no right to choose a domicile." Sto. Confl. Laws, *s.* 46. " By marriage, husband and wife become one person in law,— that is, the very being or legal existence of the wife is suspended during the marriage, or at least is incorporated and consolidated into that of the husband, under whose wing, protection, and cover she performs everything." 1 Bl. Com. 442. Such being the common law status of the wife, her domicile necessarily followed her husband's, and the maxim applied without limitation or qualification.

But the common-law theory of marriage has largely ceased to obtain everywhere, and especially in this state, where the law

has long recognized the wife as having a separate existence, separate rights, and separate interests. In respect to the duties and obligations which arise from the contract of marriage and constitute its object, husband and wife are still, and must continue to be, a legal unit; but so completely has the ancient unity become dissevered and the theory of the wife's servitude superseded by the theory of equality which has been established by the legislation and adjudications of the last half century, that she now stands, almost without an exception, upon an equality with the husband as to property, torts, contracts, and civil rights. Pub. Sts., c. 176; *ib.*, c. 90, *s.* 9; *Seaver* v. *Adams*, 66 N. H. 142, 143, and authorities cited. And since the law puts her upon an equality, so that he now has no more power and authority over her than she has over him, no reason would seem to remain why she may not acquire a separate domicile for every purpose known to the law. If, however, there are exceptional cases, when for certain purposes it might properly be held otherwise, there can be in this jurisdiction no reason for holding that when the husband has forfeited his marital rights by his misbehavior, the wife may not acquire a separate domicile, and exercise the appertaining rights and duties of citizenship with which married women have become invested. To hold otherwise would not only break the line of consistency and progress which has been steadily advanced until the ancient legal distinctions between the sexes, which were adapted to a condition that has ceased to exist and can never return, have been largely swept away, but it would also be subversive of the statutory right of voting and being elected to office in educational matters which wives now possess (Pub. Sts., c. 90, *ss.* 9, 14), inasmuch as it would compel the innocent wife to reside and make her home in whatever voting precinct the offending husband might choose to fix his domicile, or to suffer the deprivation of the elective franchise; and if he should remove his domicile to another state and she should remain here, the exercise of all her rights dependent upon domicile would be similarly affected.

This cannot be the law. On the contrary, the good sense of the thing is, that a wife cannot be divested of the right of suffrage, or be deprived of any civil or legal right, by the act of her husband; and so we take the law to be. Whenever it is necessary or proper for her to acquire a separate domicile, she may do so. This is the rule for the purposes of divorce (*Payson* v. *Payson*, 34 N. H. 518, *Cheever* v. *Wilson*, 9 Wall. 108, 124, *Ditson* v. *Ditson*, 4 R. I. 87, 107, *Harding* v. *Alden*, 9 Greenl. 140), and it is the true rule for all purposes.

Upon these views, the testatrix was domiciled in this state at the time of her decease, and, as the consequence, distribution of her estate is to be made accordingly. *Goodall* v. *Marshall*, 11 N. H. 88; *Vandewalker* v. *Rollins*, 63 N. H. 460, 463, 464. The

rights of her husband therein are not affected by his written assent to the will. The Massachusetts statute, making such assent binding, has no extra-territorial force, and there is no principle upon which it can be given effect in this jurisdiction without violating the positive enactments of our statute relative to the husband's distributive share in his deceased wife's estate. Pub. Sts., *c.* 195, *ss.* 12, 13. This cannot be done. If the result shall be to give to this husband a benefit which the testatrix did not intend he should receive, and which in justice he ought not to have, it is to be regretted; but hard cases cannot be·permitted to make bad equity any more than bad law.

*Case discharged.*

CARPENTER, J., did not sit: the others concurred.