## TOWN OF WATERTOWN v. GREAVES.

### (Circuit Court of Appeals, First Circuit. December 3, 1901.)

#### No. 377.

**1. JURISDICTION OF FEDERAL COURT—CITIZENSHIP—MARRIED WOMAN.**

While as a general doctrine the domicile of the husband is by law that of the wife, there is an exception where a married woman has been unlawfully deserted by her husband, who has gone to parts unknown and ceased to provide for her support, and in such case she may establish a separate domicile, and may acquire citizenship in another state for the purposes of the jurisdiction of a federal court, when the right to acquire citizenship therein under such circumstances is recognized by the law of such state.[1]

**2. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALK—ACTION FOR INJURY.**

In an action to recover for injuries caused by falling on a sidewalk alleged to have been defective, the question whether the city was negligent in permitting a portion of the walk in thickly-settled locality to project above the adjoining walk for three inches, where there was evidence that it has been in such condition for six months, was one for the jury.

**3. CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.**

By the settled practice of the federal courts, the burden of proving contributory negligence rests upon the defendant.

In Error to the Circuit Court of the United States for the District of Massachusetts.

William A. Abbott (John E. Abbott, on the brief), for plaintiff in error.

Edward H. Pierce, for defendant in error.

Before PUTNAM, Circuit Judge, and WEBB and BROWN, District Judges.

BROWN, District Judge. This writ of error is brought to review the rulings of the circuit court for the district of Massachusetts in an action of tort for the recovery of damages for injuries caused by a defective sidewalk.

The first question to be considered is that of jurisdiction. The plaintiff below sued as a citizen of Rhode Island. It is contended for the town that upon the evidence the plaintiff below was not a citizen of Rhode Island, and that the court erred in the instructions to the jury as to the right of a married woman, deserted by her husband, to establish an independent domicile.

That the plaintiff below went to Rhode Island before the date of the writ, April 3, 1900, with the intention of living there permanently, must be taken as a fact established by a special finding of the jury. Other relevant facts are that the plaintiff and her husband resided together at Lowell, Mass., and were citizens of that state until some time in 1892 or 1893, when her husband deserted her, and has never since lived in Lowell or contributed to her support; that she

[1] Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, Mason v. Dullagham, 27 C. C. A. 298, and Emigration Co. v. Gallegos, 32 C. C. A. 479, par. v.

has not seen or heard from him since, and that at the date of trial she did not know whether he was alive or dead; that she never had procured a divorce, and, so far as she knew, her husband had never made application for a divorce. The record contains no evidence of the circumstances under which the husband of the plaintiff below deserted her; but, inasmuch as it is the ordinary duty of the husband to abide with the family, there is, in the present case, a sufficient presumption that the wife was guilty of no fault, in the absence of any suggestion to the contrary based on the evidence. The evidence was insufficient to establish a presumption of death. Neither was there any evidence that the husband had left the state of Massachusetts, or had changed the citizenship which he had at the date of desertion. It appeared that the plaintiff was obliged to support herself by her own exertions.

The third assignment of error is as follows:

"The court erred in instructing the jury that, while the general rule of law is that the domicile and citizenship of a wife follow that of her husband, still, if a husband deserts his wife, as there is evidence tending to show was the fact in this case, the wife's domicile would not necessarily follow that of her husband; that plaintiff might acquire a domicile and citizenship in Rhode Island, independent of that of her husband, if he were living; that if the husband deserted his wife and abandoned his residence, and went to parts unknown, and there remained for years without having any communication with his wife, and without making any contribution to her support, the wife had the right to acquire a domicile and citizenship, if she choose so to do, in a place different from that of the domicile and citizenship of her husband at the time he deserted her, or from the place of the domicile or citizenship of the husband after such desertion."

It is well settled that each state has the right to determine the civil status and capacities of its inhabitants. Pennoyer v. Neff, 95 U. S. 714, 722, 24 L. Ed. 565; Hekking v. Pfaff (C. C.) 82 Fed. 403.

An examination of the decisions of the supreme court of Rhode Island upon the question of the right of a deserted wife to establish for herself an independent domicile satisfies us that there was no error in the instructions above set forth.

In Ditson v. Ditson, 4 R. I. 87 (a leading case in this country; see Atherton v. Atherton, 181 U. S. 166, 21 Sup. Ct. 544, 45 L. Ed. 794), Chief Justice Ames said, on page 107:

"Although, as a general doctrine, the domicile of the husband is, by law, that of the wife, yet when he commits an offense, or is guilty of such dereliction of duty in the relation as entitles her to have it either partially or totally dissolved, she not only may, but must, to avoid condonation, establish a separate domicile of her own. This she may establish—nay, when deserted or compelled to leave her husband, necessity frequently compels her to establish—in a different judicial or state jurisdiction than that of her husband, according to the residence of her family or friends. Under such circumstances she gains, and is entitled to gain, for the purposes of jurisdiction, a domicile of her own, and, especially if a native of the state to which she flies for refuge, is, upon familiar principles, readily redintegrated in her old domicile."

The court says also:

"Whatever was the former domicile of the petitioner, we are satisfied that she is, and has, for upwards of the last three years, been a domiciled citizen of Rhode Island, her only home, in the house of her father; and that as such citizen, and upon such notice, we have power and jurisdiction over her case,

and to change her condition from that of a married to that of a single woman, granting to her the relief which, under like circumstances, the law and policy of Rhode Island accords to all its citizens."

From this decision it would appear to be the law of Rhode Island that a married woman, unlawfully deserted by her husband, may establish an independent domicile, and thus become a citizen of the state of Rhode Island.

It is contended that this decision is merely to the effect that she may establish a domicile for the purposes of divorce. We regard it, however, as a clear and learned statement of limitations, upon the general rule that the domicile of the husband is that of the wife.

The learned chief justice, after stating the general doctrine, proceeds:

"A more proper case for the application in favor of a petitioner for divorce of the foregoing principles relating to the jurisdiction of the court over her case, and to the question of her domicile in this state, can hardly be imagined."

From this decision, it is apparent that the court did not consider a judicial decree essential as a condition precedent to the establishment of citizenship, since it is in express terms stated that the petitioner, for upwards of three years, had been a domiciled citizen of Rhode Island.

For the town it is contended that the right of a married woman is limited to a quasi domicile for the purposes of divorce, and that this decision goes no farther. But the question of citizenship was directly passed upon, and citizenship was held to exist upon a state of facts showing unjustifiable desertion.

Moreover, the case of Howland v. Granger, 22 R. I. 2, 45 Atl. 740, contains a statement by the supreme court of Rhode Island which seems to us satisfactory evidence that the domicile which the wife may acquire upon desertion is not merely a quasi domicile for the purposes of divorce, leaving her general rights as a citizen of the state in abeyance until the pronouncement of a decree of divorce, a vinculo or a mensa et thoro, but a full and independent domicile for all purposes. This case was an action brought by a married woman to recover the amount of a personal property tax paid under protest. The husband, on the day of the assessment, was a domiciled inhabitant of the state of Rhode Island. The wife was at that time living in Asheville, N. C., for her health, with the intention of making said place her permanent home, and contended that she was a citizen of North Carolina, and therefore not liable to a personal tax in Rhode Island. There was no abandonment. The persons were living apart, but the unity of the marriage relation existed undisturbed. No question of divorce was involved. The court said:

"After a careful examination of the authorities, however, we have come to the conclusion that though a wife may acquire a domicile distinct from that of her husband whenever it is necessary or proper for her to do so, as, for instance, where the husband and wife are living apart by mutual consent (In re Florance, 54 Hun, 328, 7 N. Y. Supp. 578); or where the wife has been abandoned by the husband (Shute v. Sargent, 67 N. H. 305, 36 Atl. 282); or for purposes of divorce (Ditson v. Ditson, 4 R. I. 87); or, in short, whenever the wife has adversary interests to those of her husband,—she

cannot acquire such a domicile so long as the unity of the marriage relation continues, notwithstanding that from considerations of health, as in the present case, or of expediency, one of the parties, with the consent of the other, is actually living in a different place from the other."

See, also, White v. White, 18 R. I. 292, 27 Atl. 506.

The defendant, now plaintiff in error, contends that "the proposition that the exception made in divorce cases to the common-law rule, as to the domicile of the wife following that of the husband, does not extend to proceedings other than a suit for divorce, was expressly declared by the supreme court in Barber v. Barber, 21 How. 582, 16 L. Ed. 226."

We do not so read this opinion. The point there involved was whether a woman who had been divorced a mensa et thoro might establish an independent domicile. It was decided that she could. It was neither decided nor intimated in the opinion that an independent domicile could not be established without a judicial decree. The court seems, however, to have recognized the following principles:

The rule that the domicile of the wife is that of the husband is probably found to rest upon the legal duty of the wife to follow and dwell with the husband wherever he goes.

That, upon the commission of an offense which entitles her to have the marriage dissolved, she is discharged thereby immediately, and without a judicial determination of the question, from her duty to follow and dwell with him.

That if the husband abandons their domicile and his wife, and relinquishes altogether his marital control and protection, he yields up that power and authority over her which alone make his domicile hers.

Upon page 594, 21 How., and page 230, 16 L. Ed., of the opinion, in a quotation from Bishop, appears this language:

"Courts, however, may decline to recognize such domicile in a collateral proceeding; that is, a proceeding other than a suit for divorce."

It may be considered, in some jurisdictions, that the appropriate proceeding for establishing the wrongs which entitle a wife to an independent domicile is a proceeding for divorce a vinculo or a mensa et thoro, and that, in consequence of the difficulties of establishing these wrongs in a collateral inquiry, the courts should require an adjudication by a divorce court which determines finally and for all purposes the status of the wife. See Minor, Conf. Laws, § 47. But this is rather a rule of procedure or of evidence than a rule of right, and is analogous to the rule of equity that a creditor shall establish his right by a judgment of law, before attacking in equity a fraudulent conveyance.

There seems to be no conflict of authority as to the point that, by the delictum of the husband, the wife is immediately absolved from her duty to follow and dwell with him, and that she is thereafter entitled, as a matter of right, to choose her own domicile.

We are of the opinion that the question whether, in order to assert or establish this right in a collateral proceeding, she must first

procure a judicial decree establishing her status, as against her husband and all the world, is a distinct question.

If a plea in abatement had raised the question of the wife's domicile, and, before a hearing on the plea, she had applied to the divorce courts of Rhode Island and procured a decree of divorce, that decree, so far as the question of citizenship was concerned, would give her no new rights, but would furnish her with judicial evidence that before the bringing of her action she was a citizen of Rhode Island.

The rulings of the circuit court as to the legal rights of a deserted wife, in the case at bar, were in accordance with the law as stated in Cheever v. Wilson, 9 Wall. 108, 124, 19 L. Ed. 604, 609:

"The rule is that she may acquire a separate domicile whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues. The proceeding for a divorce may be instituted where the wife has her domicile."

This implies that the domicile may be acquired prior to and independently of proceedings for divorce. And this implication is in agreement with the express decision of the Rhode Island court.

Moreover, various expressions of the supreme court seem to recognize that, if the wife is living apart by the fault of the husband, the rule that his domicile is her domicile is inapplicable. Thus, in Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, are repeated the expressions of the court in Cheely v. Clayton, 110 U. S. 701, 705, 709, 4 Sup. Ct. 328, 330, 28 L. Ed. 298, 299:

"If a wife is living apart from her husband without sufficient cause, his domicile is in law her domicile"; and "it is hard to see how, if she unjustifiably refused to live with her husband, * * * she could lawfully acquire in his lifetime a separate domicile in another state," etc.

The question whether the wife, in order to bring suit as a citizen of another state from that in which her husband is domiciled, must establish her right to acquire a separate domicile by the judgment of a proper tribunal in a direct proceeding for that purpose, is one that presents difficulties.

It may be said that there are practical difficulties in trying collaterally the relations of husband and wife, and in determining whether or not the husband has been guilty of such a delictum as justifies a separate domicile. But similar difficulties do not preclude a husband from asserting, in defense of an action for supplies furnished to a wife, the adultery or other misconduct of the wife. Such cases involve a collateral inquiry into the rights of husband and wife arising from a breach of the obligations of marriage, yet it has never been held that the husband must establish the fact of the wife's delictum in a direct proceeding for that purpose. Gill v. Read, 5 R. I. 343, 73 Am. Dec. 73.

The wife may not desire a divorce a vinculo or a mensa et thoro; she may be ready to condone the fault of the husband in case he shall return; she may desire, for her own sake or that of her family, to avoid publicity; or she may die before she has established her rights by a judicial decree.

The difficulties that might arise from adopting a rigid rule that the wife's domicile shall be presumed to be her husband's until she

overcomes this presumption by a judicial decree seem more serious, than those that would arise from trying the question of domestic relations collaterally.

We should hesitate long before deciding that the only exception to the rule that the domicile of the wife follows that of her husband is in judicial proceedings whose express object is to show that the relation itself ought to be dissolved or modified, since there is grave danger that serious injustice might arise. See Le Sueur v. Le Sueur, 1 Prob. Div. 139–142; Eversley, Dom. Rel. (1896) p. 167.

2 Bish. Mar. & Div. §§ 114, 115, upon which counsel for the town relies, seems to recognize that the rule should not always prevail in non-divorce cases.

Furthermore, upon principle, it is difficult to see why a wife who is completely abandoned by her husband, even in consequence of her own fault, should be precluded from establishing an independent domicile. If the husband, justifiably or unjustifiably, renders it impossible for her to dwell with him, and voluntarily relinquishes altogether his marital control and protection, so that the abandonment is a completed fact, it cannot be said, in strictness, that her dwelling apart from him is her continuous fault. Her original fault may have justified the abandonment, but his renunciation of his former obligations keeps her from his home, and if she must find for herself another home, and from necessity or convenience goes to another state, it is difficult to see why she should be precluded from the ordinary rights of a citizen of that state. The expressions of the supreme court in Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, which relate to a wife living apart without sufficient cause, or through an unjustifiable refusal to live with the husband, do not cover a case in which the living apart is caused by the husband's total abandonment of the wife.

In the present case, however, we are relieved from a consideration of this question by the presumption that the wife was guilty of no fault which justified either the original desertion or its long continuance.

We are of opinion especially that in the present case, and upon the present assignments of error, the defendant is not entitled to make the objection that the proper evidence of the right of the wife to an independent domicile is a judicial decree.

No objection was made to the introduction of evidence of facts upon which, according to the general law as well as the law of Rhode Island, the wife became entitled, as a matter of legal right, to establish an independent domicile.

The defendant below was content to rely upon the proposition that upon all the evidence the plaintiff was not a citizen of Rhode Island. No objection was made to trying the question of the relations of husband and wife collaterally. The objection that she had not established her rights by a judicial decree, and that the defendant should not be compelled to try the question of the relations of husband and wife in this action, was not made, and must be held to have been waived.

The circuit court was clearly right in refusing the instruction set forth in the second assignment of error, and there was no error in the instructions set forth in the third assignment of error above quoted, either as a statement of general law or as a statement of the law of Rhode Island.

The next question is whether the court erred in denying the defendant's motion that the jury be directed to find for the defendant. The plaintiff was injured by a fall due to a defect in a sidewalk. There was evidence that where a gravel walk adjoined a concrete walk the concrete projected above and across the gravel walk at a height of about three inches at the place where the plaintiff fell, and that the defect had existed for at least six months. This was in a thickly-settled locality. The plaintiff's toe struck the edge of the concrete, causing her to fall forward on her hands and knees upon the concrete. This occurred on the morning of December 27, 1899, at about 6:15 o'clock, before sunrise, when it was still dark, and while the plaintiff was on her way to work in the mill at Watertown. We think it clear that the question whether there was a defect in the sidewalk which the defendant, in the exercise of reasonable care, should have remedied, was properly submitted to the jury. Redford v. City of Woburn, 176 Mass. 520, 57 N. E. 1008; Lamb v. City of Worcester, 177 Mass. 82, 58 N. E. 474.

The fourth and fifth assignments of error relate to the burden of proof. In accordance with the settled practice of the federal courts, the learned judge correctly refused to grant an instruction that the burden of proving due care was on the plaintiff, and ruled that the burden was on the defendant to prove that the plaintiff was not in the exercise of due care. We find no error in these instructions.

We are also of the opinion that there was no evidence in the case tending to show that the plaintiff was guilty of negligence, or that required the court to submit to the jury the question of contributory negligence. Therefore the matters covered by the sixth and seventh assignments of error are irrelevant. While the phrase, "if both parties were at fault, and the negligence of the defendant was the proximate, efficient, and prime cause of the injury, the plaintiff might recover," might have been misleading, had there been any proper question of contributory negligence in the case, there was no such question, and the error related to an irrelevant topic, and was not harmful.

The eighth and ninth assignments of error cover the refusal of the court to give instructions relative to the aggravation of an injury caused by failure to use ordinary care in securing surgical or other medical treatment, or caused by any other want of ordinary, reasonable care, and also to modifications of the instructions requested. We are of the opinion that upon the case presented no instructions upon this subject were called for, and that the jury would not have been justified in finding any failure of ordinary care in securing surgical or other medical treatment, or want of other ordinary care in the conduct of the plaintiff.

The judgment of the circuit court is affirmed, with interest and with costs.