## GORDON v. YOST.

(Circuit Court, N. D. West Virginia. August 22, 1905.)

### No. 600.

1. PLEADINGS—OVERRULING OF DEMURRER TO PLEA—ALLOWING MOTION TO REJECT.

Under the common-law practice of West Virginia, as modified and liberalized by decision, a court will not necessarily enter an order of dismissal on the overruling of a demurrer to a plea, but may, on the contrary, after issue has been joined on the plea on the overruling of the demurrer, set aside such issue, and entertain a motion by plaintiff to reject the plea, where it is of opinion that substantial justice will be promoted thereby.

2. DOMICILE—CITIZENSHIP OF WIFE—DESERTION BY HUSBAND.

The rule that the domicile of the husband is that of the wife does not apply in cases of desertion by the husband, and in such case the wife may be a resident and citizen of a different state from her husband for the purposes of a suit by her in a federal court to recover for the alienation of his affections and causing his desertion.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Domicile, §§ 25, 26.]

On motion by plaintiff to set aside issue joined on plea and allow a motion to reject the plea, and motion by defendant to set aside the issue and dismiss the action.

F. L. Blackmar, V. B. Archer, and Wm. Beard, for plaintiff.
Reese Blizzard and Hunt & Staples, for defendant.

DAYTON, District Judge. Hattie L. Gordon, on April 7, 1902, filed her declaration in case in this court against Matie Yost, alleging herself to be a citizen of the state of New York, and the defendant a citizen of the state of West Virginia; that she was the lawful wedded wife of William Gordon, and that the defendant had willfully and wrongfully alienated the affections of her said husband from her and caused him to abandon and desert her. To this declaration the defendant has appeared for the purpose alone, and filed a plea to the jurisdiction of this court, alleging that the said plaintiff, Hattie L. Gordon, is not a resident of the state of New York, but of the state of West Virginia, because that her husband, the said William Gordon, is a resident of the state of West Virginia, and not of the state of New York. To this plea the plaintiff demurred, and this court, my predecessor, Judge Jackson, sitting, on March 13, 1903, overruled the demurrer, entered no judgment however, but permitted issue to be joined on said plea. Defendant now moves to set aside the issue joined and dismiss the action, upon the plea confessed by the demurrer thereto, while plaintiff asks to set aside the issue, withdraw the demurrer, and move to reject the plea as insufficient.

It is not necessary for me to say that in the practice on the law side of this court it must be guided by that prevailing in the courts of this state. While the system of common law pleading prevails in West Virginia, yet many of its strict rules have been moderated

by its courts in the interest of securing trials upon merits rather than dismissals on technicalities. Under these modifications it is doubtful whether a case would be dismissed upon a demurrer to a plea to the jurisdiction overruled, if plaintiff asked for and showed ground for an issue of fact thereon. Our courts are becoming less technical in the use of terms, and I think would consider such demurrer as in fact a motion to reject. This doubtless was the view taken by my predecessor when he overruled the demurrer to the plea, and then allowed the plaintiff to reply generally and issue to be joined, instead of at once dismissing the action.

It is well settled in the practice of the state that, where such action does not operate either as delay, surprise, or other injury to the opposite party, either party will be allowed to have issue set aside, withdraw a plea, file new pleas, or move to reject ones already filed, or secure the filing of ones, on reconsideration by the court, before time rejected. These points in practice are substantially established and upheld in such cases as Amos v. Stockert, 47 W. Va. 109, 34 S. E. 821; Lazier v. Nevin, 3 W. Va. 622; Hart v. R. Co., 6 W. Va. 337; State v. Seabright, 15 W. Va. 590.

I have no trouble, therefore, in reaching the conclusion, under the circumstances of this case, that I should not allow judgment of dismissal on the demurrer, and may very properly allow plaintiff's motion to set aside the issue and reject said plea, if I believe substantial right and justice will be accomplished thereby.

The single question raised by the plea is that the plaintiff, being a married woman, can have no other domicile and be a citizen of no other state except that of her husband. Therefore, her husband being a resident of West Virginia, she must be considered as resident of that state, no matter where she may be.

I frankly confess that, while my sympathies were all against the proposition, especially in a case of this kind, yet my judgment at first was that it was legally sound and must be enforced. A careful study of the matter has convinced me such judgment was erroneous. The case of Minor v. Happersett, 21 Wall. 162, 22 L. Ed. 627, has distinctly decided that a woman was a "citizen" not only after, but before, the passage of the fourteenth amendment, although not, under state law, entitled to vote.

It is unquestionably true, as a general proposition of the common law, that where she marries she merges her legal identity in her husband's. The very essence of the marriage vow places upon him the obligation to support and maintain her. That he may do so he may go from one place to another, from one home to another, and her obligation is to follow. Her home or domicile, under ordinary circumstances, therefore, is his, and must be his, in a relation where each have solemnly pledged themselves to cleave, one to the other, until death shall part them, and the law requires the husband to be the provider—the supporting power.

The foundation of the rule is based upon this principle of the home as established by the husband, cared for by the wife, where they two shall dwell together. The fact that the vast majority of

husbands and wives are true to their vows, do establish such domicile, and do perform their mutual obligations, the one to the other, establishes the general rule of the law, for the law assumes that to be true which is true in the great majority of cases. But we must remember that "law is beneficence acting by rule," and hence it is found, in very many instances, that abnormal conditions must be governed by the exception to, and not the general rule itself, in order that such beneficence may work good, and not evil.

Let us suppose one of those abnormal conditions. Here is a home established legally and under the general rule, wherein the husband and wife are discharging their marital obligations one to the other, and living in peace and happiness. A wicked, vicious woman, with physical charms and large means it may be, determines to break up that home and succeeds. She persuades the husband to break his obligations, violate the laws of God and man, leave the wife destitute, and go to another state to live in adultery with her. Could anything be more inhuman or cruel than to say that the wife can have no other home, no other domicile, than the foul abode of these two who have so deeply wronged her? It may be said that she may secure a divorce from the husband. Yes; but she may not desire to do so. She may be willing to condone, forgive. Shall she not be permitted under the law to establish, under such conditions, a domicile wherever she can, where she may still maintain her virtue and secure a subsistence for herself, and, it may be, for helpless children abandoned with her by the faithless husband? I think so, and I am glad to find that the courts have so held. In Cheever v. Wilson, 9 Wall. 108, Mr. Justice Swayne, at page 123, 19 L. Ed. 604, says:

"It is insisted that Cheever never resided in Indiana; that the domicile of the husband is the wife's; and that she cannot have a different one from his. The converse of the latter proposition is so well settled that it would be idle to discuss it. The rule is that she may acquire a separate domicile whenever it is necessary or proper that she should do so. The right springs from the necessity for its exercise, and endures as long as the necessity continues."

Minor, in his work on Conflict of Laws, § 47, p. 97, reaches this conclusion, after citing numerous cases and ably discussing the matter:

"If the wife applies for a separation or divorce a vinculo because of the husband's desertion, it is now well established that she may renounce the constructive domicile created by the marriage status, and acquire a separate domicile of her own, where she may obtain a divorce.

"The question becomes more complicated if we suppose the wife unwilling or without intention to obtain a divorce, or if the question should arise before she has begun to put such intention into effect. It has been said by some eminent authorities that the doctrine of the wife's separate domicile, under such circumstances, does not extend beyond cases of divorce, or, as it is sometimes put, beyond proceedings whose 'express object is to show that the relation itself ought to be dissolved or so modified as to establish separate interests, and especially a separate domicile and home; bed and board being put, a part for the whole, as expressive of the idea of home.'

"It is believed that this is the proper solution in those cases (e. g., adultery or cruelty) where the husband's offense does not go to the extent of depriving the wife of his support or of a home provided by him. And the cases do not take a position beyond this. There is good reason for this doctrine. The wife

140 F.—6

by her silence may be taken to have signified her intention to condone the offense, if, indeed, any has been committed. And if it be alleged that she has not condoned it, the difficulties in the way of establishing the wrongs alleged in a collateral inquiry would be insurmountable.

"But where the improper act of the husband is one that amounts to a total renunciation of the marriage relation, as in case of desertion, and as a result the wife is left to make her own way in the world, and by her own endeavor to provide a home for herself and her family, it would seem to be a great injustice to deny her the right to make her legal as well as her actual home in any place which will promise her a livelihood, untrammeled by presumptions of law favorable to the husband, which he himself has outrageously cast aside. It is submitted, therefore (with deference), that the wife, even without divorce, should be permitted to alter her domicile when deserted by her husband, especially when he has added to his desertion the offense of taking with him a paramour, or otherwise rendering his new home uninhabitable by his wife."

See cases cited.

In Harding v. Alden, 23 Am. Dec. 549, it is held:

"Husband and wife may have different domiciles under the law regulating divorces where the husband has forfeited his rights by misbehavior and by desertion of his wife."

In Dutcher v. Dutcher, 39 Wis. 659, it is held: The rule that the domicile of the husband is the domicile of the wife does not apply in cases of desertion by the husband. Cited in note to Jenness v. Jenness, 87 Am. Dec. 335, 340.

In Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650, it is held:

"The matrimonial domicile of the wife is usually that of the husband, but if she is justified in leaving him because his conduct has been such as to entitle her to a divorce, and she thereupon does leave him and goes into another state for the purpose of there permanently residing, she acquires a domicile in the latter state."

See, to the same effect, Harteau v. Harteau, 25 Am. Dec. 372, and the note at page 378, and authorities there cited.

Tiffany, in his handbook on the Law of Persons and Domestic Relations, at page 54 says:

"When she [the wife] has been abandoned by her husband, and denied the privilege of dwelling with him and going to him, the presumed identity of domicile becomes a fiction, founded on no adequate reason, and no longer prevails."

Finally, in Town of Watertown v. Greaves, 50 C. C. A. 172, 112 Fed. 183, where this question is fully and very ably discussed, this conclusion is arrived at:

"While as a general doctrine the domicile of the husband is by law that of the wife, there is an exception where a married woman has been unlawfully deserted by her husband, who has gone to parts unknown and ceased to provide for her support, and in such case she may establish a separate domicile, and may acquire citizenship in another state for the purpose of the jurisdiction of a federal court, when the right to acquire citizenship therein under such circumstances is recognized by the law of such state."

Sustained by these authorities, I do not believe that, under all circumstances, and as an inexorable rule, the domicile of the wife must be controlled by that of the husband, but that a clear-cut exception exists in case of her desertion.

Do the allegations of plaintiff's declaration charge in full and apt terms her case to be within this exception, so that the plea of general issue will fully traverse them? I think they do. She charges:

"By means of which said inducement, influence, persuasion, and procurement, and on no other account or for no other cause whatsoever, the said William Gordon, so being such husband as aforesaid, did unlawfully and wrongfully, and without the permission or consent, and against the will of this plaintiff, leave, desert, abandon, and quit the society, companionship, company, and association of this plaintiff as his lawful wife, and hath remained and continued absent and away from her (this plaintiff's) society, companionship, company, and association ever since."

Let the motion to reject this plea be sustained.