[No. 9136.  Department One.  April 19, 1911.]

FREDERICK W. BUCHHOLZ, *Appellant*, v. ORLIN W. BUCHHOLZ *et al.*, *Respondents*.[1]

EXECUTORS AND ADMINISTRATORS—JURISDICTION—DOMICILE OF WIFE —"RESIDENT." Rem & Bal. Code, § 1284, providing that administration shall be first granted in the county in which the deceased was a resident or had his place of abode, means a "residence" in the strict legal sense, so that the domicile of a wife, under normal conditions, follows that of her husband for the purposes of administration.

DOMICILE—HUSBAND AND WIFE—RIGHT OF WIFE—REMOVAL OF DISABILITIES. Rem. & Bal. Code, § 5926, removing all the civil disabilities of a married woman was not intended to authorize a wife to establish a domocile for herself, irrespective of her husband's domicile, during the existence of the marital relation.

DOMICILE—HUSBAND AND WIFE—ABANDONMENT—RIGHT OF WIFE. The evidence shows an abandonment of the marriage relation, and of the husband's right to fix the domicile of his wife, which she may thereupon establish for herself, where it appears that they had been separated for several years and lived in different counties, the husband had leased his home for a term of five years to a widow in consideration of "boarding and lodging," had stated that he would have nothing to do with his wife, and did not visit her during her last sickness or attend her burial.

EXECUTORS AND ADMINISTRATORS — JURISDICTION — HUSBAND AND WIFE—DOMICILE OF WIFE. Where a husband has deserted his wife and has established a separate domicile, jurisdiction to probate the wife's estate depends upon her own domicile.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered February 21, 1910, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, vacating the appointment of an administrator and dismissing proceedings in the matter of an estate. Affirmed.

*Jackson & Bailey* and *G. G. Ripley*, for appellant.

*Belden & Losey*, for respondents.

[1]Reported in 115 Pac. 88.

GOSE, J.—The appellant and his deceased wife, Justina, were married in 1867, in the state of Minnesota. They moved to Spokane, in this state, in 1887. The wife died at the latter place on October 15, 1908. From 1887 until her death, her actual residence had been at all times in the city of Spokane and its immediate vicinity in Spokane county. She had at no time been in Stevens county. About November, 1898, the appellant, a clergyman, was appointed to a charge embracing Stevens county and a small part of Spokane county. He continued in that district for about six years, after which his work embraced Stevens county only. Since 1906 he has not been engaged in ministerial work. Since 1898 his domicile has been in Stevens county first, and until about 1905, at a place called Addy, and thereafter at his farm at Evans. The deceased left four children, two sons and two daughters; the youngest daughter being about thirty years of age at the time of her death. She also left surviving her a grandchild, aged about thirteen years, the child of a deceased son. On November 30, 1908, upon the petition of appellant, an order was entered in the superior court of Stevens county appointing him administrator of the estate of his wife. The petition alleged, and the order recited, that the deceased was a resident of Spokane county at the time of her death. On the 25th day of October, 1909, the appellant applied for and was granted leave to file an amended petition for letters of administration. In the amended petition he alleged that the deceased was a resident of Stevens county at the time of her death. In response to his citation, the sons and daughters answered, denying that their mother was at any time a resident of Stevens county, and averred that she was a resident of Spokane county at the time of her death. Upon the issue thus joined, the case was tried to the court. The court found "that at the time of the death of the said Justina Buchholz she was a resident of, and had her place of abode in, Spokane county, state of Washington, and was not at said time a resident of Stevens county." As a con-

clusion of law the court found, "that the court is without jurisdiction in the premises, and that this action be dismissed." A decree was thereupon entered vacating the former order and dismissing the amended petition. This appeal followed.

Our statute, Rem. & Bal. Code, § 1284, subd. 1, provides that wills shall be proved, and letters testamentary or of administration shall be granted, first, "in the county of which deceased was a resident or had his place of abode at the time of his death." The appellant contends that the word "resident," as used in the statute quoted, means a legal residence or domicile. It is not claimed that the deceased had her abode in Stevens county at the time of her death. We think this court has in effect so construed the statute. *State ex rel. Baldwin v. Superior Court*, 11 Wash. 111, 39 Pac. 818. However, we have no doubt that the word "residence" is here used in its strict legal sense.

The appellant next contends that the domicile of the wife until divorced follows that of the husband, for the purpose of administration. Respondents insist that, under the provisions of Rem. & Bal. Code, § 5926:

"All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished, and for any unjust usurpation of her natural or property rights she shall have the same right to appeal in her own individual name to the courts of law or equity for redress and protection that the husband has: Provided always, That nothing in this chapter shall be construed to confer upon the wife any right to vote or hold office, except as otherwise provided by law;"

the right of the wife to establish a domicile for herself, wherever and whenever she chooses, without regard to the domicile of the husband, cannot be questioned.

We cannot think that the statute last quoted should receive so broad a construction. Its setting in the original act shows, we think, that the legislature did not have such intention. Laws 1879, pp. 77 to 82; Id., p. 151; Code 1881,

§§ 2396 to 2418. The whole scope of the act shows conclusively, we think, that the law-making body intended to confer upon the wife the right to acquire and hold property, to sue, and to be sued, to contract, etc.; and to give her equal rights with the husband in the custody of the children. To this extent her legal entity and identity were established. It seems certain that the legislature did not intend to dissolve or destroy the unity of the marriage relation. Later legislation touching the marriage relation indicates the correctness of this view, notably the statute, Rem. & Bal. Code, § 2444, which makes it a crime for the husband to wilfully neglect to support his wife. Nor can we agree with the appellant's view of the law.

We accept his statement of the law that, generally speaking, it is the privilege of the husband to fix the family domicile. His duty to maintain and support the family and his right to establish the domicile are correlative.

A further statement of the facts is essential to a proper understanding of the case. The appellant testified that, although he knew his wife was ill, he did not visit or see her for some nine or ten months preceding her death. Two or three days before her death she requested her children not to notify their father of her decease, assigning as a reason that he had not cared for her while she was alive. He was not notified of her death, and was not present at her burial. One of the sons testified that the father said to him, in speaking of the deceased, that "he was not going to have anything more to do with her." This was five or six years preceding her decease. He made a like statement to another son two or three years later. The appellant's conduct from 1898 to the date of the death of his wife confirms the truth of this testimony. His words do not square with his conduct. On December 15, 1905, he leased his home in Stevens county and the ground upon which it was situated, for a term of five years to a widow, whom he married about six months after the death of the deceased. The consideration for the

lease was that the lessee should furnish the lessor with "boarding and lodging." The appellant testified that the lessee owned the household goods in Stevens county. The appellant, from December, 1905, was only a boarder in his own home. The record speaks but one language, and that is that he did not desire or intend that his wife should share his domicile in Stevens county. This inference is too strong to be overcome by his declarations to the contrary. By his own wilful neglect of his marital duties, speaking of his conduct in the most charitable light, as we view it from the record, he destroyed the home and the marriage entity. There was nothing left but the mere shell of the marriage relation.

Where the husband has deserted the wife, or where there has been a mutual abandonment of the marriage relation so that every purpose of marriage is destroyed, the reason for the rule that the husband can fix the family domicile ceases, and the rule ceases, and the wife is then at liberty to establish a separate domicile for all purposes. *Gordon v. Yost*, 140 Fed. 79; *Town of Watertown v. Greaves*, 112 Fed. 183; *Shute v. Sargent*, 67 N. H. 305, 36 Atl. 282; *In re Florance's Will*, 7 N. Y. Supp. 578, 84 Am. St. 33, 34, note 8. In the *Gordon* case it was held that, where the husband has deserted the wife, she may be a resident and citizen of a different state from her husband, for the purpose of prosecuting a suit in a Federal court to recover for the alienation of his affections and causing his desertion. In the *Town of Watertown* case an undivorced married woman was permitted to sue in a Federal court in an action of tort for the recovery of damages for injuries caused by a defective sidewalk. The contention that she could only establish a *quasi* domicile apart from the domicile of her husband, for the purposes of divorce, was rejected. In considering the limitations of the rule that the domicile of the wife follows that of the husband, the court said:

"If the husband abandons their domicile and his wife, and

relinquishes altogether his marital control and protection, he yields up that power and authority over her which alone make his domicile hers."

In the *Shute* case the wife was an actual resident of the state of New Hampshire at the date of her death. The husband retained a domicile in Massachusetts, but had abandoned his wife before she left that state. It was held that the wife was domiciled in New Hampshire at the time of her death. The court said that, in view of modern legislation, "no reason would seem to remain why she may not acquire a separate domicile for every purpose known to the law." *In re Florance's Will, supra,* it is said:

"If she was enough of a resident to institute divorce proceedings, as is conceded, she is enough of a resident to leave her property to her children, and to be protected from the claim of a husband with whom she had not lived for 12 years."

The word "domicile," as applied to the marriage relation, means a home where the husband and wife dwell together in amity. Whilst we think that the husband, notwithstanding the liberal provisions of our statute, has the right, under normal conditions, to fix the family domicile, there is no sound principle of law which forbids the wife, when the essence of the marriage relation has been destroyed, from establishing a separate domicile for every purpose. These views are supported in principle by *McCain v. Gibbons,* 7 Wash. 314, 35 Pac. 64, and *Kimble v. Kimble,* 17 Wash. 75, 49 Pac. 216.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.