1. WILLS—PROBATE—JURISDICTION—DOMICILE OF TESTATRIX.

After her marriage, a resident of Monroe county removed with her husband to Queens county. About a year before her death she and her infant son went to Rochester, N. Y., in Monroe county, with the declared intention of never returning to Queens county to live, and she resided with a sister in Rochester, separate from her husband, until her death. *Held*, that the Surrogate's Court of Monroe county had jurisdiction of proceedings for the probate of her will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 586.]

2. SAME.

That a clause in the will of a married woman appoints a guardian for her infant son, other than his father, does not affect the proceeding for the probate of the will, though the clause is void during the father's life.

In the matter of the probate of the last will and testament of Lottie Elliot Walker.   Decree admitting will to probate.

Frederick A. Mann, for proponent.

Myron T. Bly, special guardian, for infant legatee.

Wilmer J. McCallister (H. H. Woodward, of counsel), for contestant.

BROWN, S.   The probate of the will of decedent is before us. The will of the decedent was heretofore probated by Hon. George A. Benton, surrogate of this county, upon the failure of the decedent's husband, the contestant herein, to appear upon the return day of the citation, although he had filed an answer objecting to the probate of the will.   Subsequently, upon making excuse for his failure to appear, the present surrogate opened the decree admitting the will to probate and heard the proofs and allegations of the respective parties.

The first·objection is that this court has not jurisdiction to probate the will, on the ground that the decedent, being a married woman, was not a resident of this county, but was a resident of the county of Queens, where her husband resided.   The decedent, before her.marriage, was a resident of the county of Monroe.   After her marriage she removed with her husband to Queens county, in this state.   The issue of the marriage was one boy.   About a year before her death she and her husband broke up housekeeping in the  city of New York, and she and her son came to the city of Rochester, and abode at the house of a sister of the decedent in this city, and continued to abide there, excepting for a few weeks spent at the lake at a summer cottage, until her death in the city of Rochester .at the house of said sister.   The evidence shows that the decedent, at the time of breaking up housekeeping at her former home in Queens county, told her sister that she was never going back there to live; and, subsequently, after reaching Rochester, she told one or two parties that it was her intention to make her home in Rochester.   From the evidence before us in this proceeding we are of the opinion that the testatrix intended to make her home in Rochester, and that she did make her home in Rochester, and became ·an inhabitant of Rochester, and was, in the language of the Code, a resident of the city of Rochester at the time of her death. She also owned real estate in the city of Rochester, Monroe county, N, Y.   Now, upon this state of facts, was the testatrix a resident of the county of Monroe; she being a married woman, and her husband maintaining a residence in the county of Queens at the same time?

Under the old common law there is no question that she could not have secured or acquired a residence, while she was a married woman, distinct from that of her husband, under the evidence before us in this case; but the married woman's acts adopted by this state have so changed the rule of the common law that, in the judgment of this court, a married woman can have a separate residence from that of her husband, if she so wills and elects.   While this may affect her right to insist upon the support of her husband, nevertheless· the fact of her taking up a separate residence or a different residence from her husband is not an annulment of the marriage contract; and the husband cannot by process of law compel her to live with him or·make her residence with him.

Respecting the duties and obligations which arise from the contract of marriage and constitute its object, husband and wife are still, and must continue to be, a legal entity; but so completely has the ancient unity become dissevered and the theory of the wife's servitude superseded by the theory of equality, which has been established by the married woman's acts during the last 50 years, that the wife now stands, almost without an exception, upon an equality with her husband as to property, torts, contracts, and civil rights; and, seeing the law puts upon her an equality, so he now has no more power and authority over her than she has over him, no reason would seem to remain why she may not acquire a separate domicile for every purpose known to the law.    To hold otherwise would not only break the line of consistency and progress which has been steadily advanced until the ancient legal distinctions between the sexes, which were adapted to a condition that has ceased to exist and can never return, have been largely swept away. Shute v. Sargent, 67 N. H. 305, 36 Atl. 282.    In Matter of Florance Will, 7 N. Y. Supp. 578, 54 Hun, 328, Judge Van Brunt, presiding justice, in the opinion said:

"The old rule in reference to a married woman's domicile cannot certainly prevail in view of the rights which are recognized to be hers by the statute. The property relations between husband and wife have been entirely changed since the rule in question has obtained, and the reason for the rule no longer exists. The wife is now a distinct legal entity, having in the disposition of her property all the rights, and even more than, a husband has ever possessed, and the husband has no control whatever over her movements or her disposition of her property."

The word "resident," as used in the Code (subdivision 1, § 2476), has been construed to mean "inhabitant." The old Code did use the word "inhabitant;" and, as the courts have construed the meaning of the term in this section of the Code of Civil Procedure, the Legislature did not intend to place any further limitation upon the surrogate's jurisdiction by substituting the word "resident." The word "resident" is co-ordinate with, and intended in that particular instance to have the same meaning as, that ordinarily attached to the word "inhabitant." The Court of Appeals, in Bolton v. Schriever, 135 N. Y. 65, 31 N. E. 1001, 18 L. R. A. 242, has presented an exhaustive review of the questions of the surrogate's jurisdiction as founded upon this section; and throughout the opinion are used the words "inhabitancy" and "inhabitant." On page 71 of 135 N. Y., page 1002 of 31 N. E. (18 L. R. A. 242), this language is used:

"The duty to investigate and decide upon the fact of inhabitancy is necessarily and naturally to be implied from the whole provisions of the statute. * * * If no contest is made, and there is no evidence upon the subject of the inhabitancy of the testator one way or the other, except the sworn allegation in the petition, I do not see why the surrogate may not rely upon the fact so stated."

Again, at page 73 of 135 N. Y., page 1003 of 31 N. E. (18 L. R. A. 242), the opinion reads:

"In the organization of the tribunals which are to exercise this jurisdiction, although the language of the statute may create a separate and distinct tribunal for each county in the state, and upon certain facts grant jurisdiction to one of them to the exclusion of all others, yet the facts upon which

the jurisdiction is given to the court of one county, instead of to another, are merely incidental, partaking somewhat of the character of matters of procedure; the main fact being the actual death of an individual who at the time of his death was an inhabitant of the state. That is the jurisdictional fact, upon the existence of which is founded the duty of the state to protect and distribute the property according to law. Whether one or the other of the Surrogate's Courts in the various counties shall administer upon the estate, and thus fulfill the obligation which lies with the state itself, is a question which the Legislature has provided for; and it depends, among other things, upon the fact of inhabitancy. This fact the surrogate to whom the matter is presented must decide, and, if he decide that it exists and upon evidence which legally tends to support his decision, under such circumstances, we think, it ought to stand until reversed. This is believed to be the general rule. It is a matter of very trifling importance, except upon the mere question of convenience, which of such Surrogate's Courts shall take the proof as to the due execution of the will, and grant letters testamentary thereon."

With the facts before us, as shown by the evidence in this case, and the construction given to subdivision 1 of section 2476 of the Code of Civil Procedure, above cited, and the authorities relative to a married woman's right to maintain a separate residence from her husband, I am of the opinion that the Surrogate's Court of Monroe county has jurisdiction for the purpose of proving the will of the decedent. I further find that, at the time of the making of the will offered for probate, the decedent was of sound and disposing mind, a citizen of the United States, and under no restraint, and that said will was her free and unconstrained act, capable of passing real and personal property. I further find that said will was duly executed in conformity with the laws of the state of New York regarding signing, publishing, attesting, etc.

Objection has been raised as to the validity of the clause in the will appointing a testamentary guardian for the infant other than the father. This question does not affect the probate of the will. Without question, so long as the father lives, letters of testamentary guardianship cannot be issued under the provision for the appointment of a testamentary guardian under the terms of the will, and said clause is void during the life of the father of the infant in question. The will should be admitted to probate and letters testamentary issued to the executor named therein, with costs in favor of the proponent of the will, and against the contestant personally, to be adjusted upon voluntary appearance in court or upon five days' notice.

The allowance to Myron T. Bly, special guardian for the infant Frederick W. Walker, Jr., on this proceeding, is fixed at $110, in accordance with his affidavit filed in this court, which allowance shall be paid by the executor and charged as a disbursement against the estate.

Let findings and decree be prepared and entered accordingly.

Decreed accordingly.