A married woman, without grounds for divorce or legal separation, having lived with her husband for many years in Pennsylvania, could not acquire a separate legal domicile in New York.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Domicile, § 25.]

2. DESCENT AND DISTRIBUTION — HUSBAND AND WIFE — DOMICILE OF WIFE — WHAT LAW GOVERNS.

Where a married woman, after having lived with her husband in Pennsylvania for many years, without having grounds for separation or di-

vorce, left him and moved to New York, where she died a month later, the law of Pennsylvania must govern the distribution of her estate; she being still a resident of that state.

Judicial settlement of the accounts of Emma J. Bushbey and others, as executors of the will of Mary F. Phelps, deceased. Division decreed.

Harry R. Lewis (Frank W. Stevens, of counsel), for executors.
Chauncey Rogers (William Martin, of counsel), for contestant Dyer Phelps.

CROSBY, S. By stipulations made in open court the several parties interested in this matter have eliminated all questions from the case except these two, viz.: First, whether as a matter of fact Mary F. Phelps intended to change her residence from Columbus, Penn., to Jamestown, N. Y., on or about April 1, 1905; and, second, whether as a matter of law such intent, coupled with her actual removal to Jamestown and her continued stay there till her death on May 13, 1905, could operate to give her a residence separate from her husband, who, it is conceded, lived all the time in Pennsylvania.

Let us take up the proposition of law first. The learned surrogate of Monroe county has recently declared in effect that the very last vestige of woman's slavery is at last swept away; that a woman, without a divorce or separation from her husband, and without grounds for a separation or divorce, indeed without any excuse or reason except that she wills it, may acquire a legal as well as an actual residence separate and apart from her husband. Matter of Walker, 54 Misc. Rep. 177, 105 N. Y. Supp. 890. I am not prepared to go that length. It is a matter for pride that our state has gone so far toward emancipating woman from her former condition. It is no longer safe for her husband to beat her with a rod of the size of his thumb or smaller. She is now considered a human being separate and distinct from her husband. She is a legal entity in and of herself. She has all the property rights that her husband could have. She may even sue her husband in an action on contract, and be sued by him. All these reforms have been brought about by the several married woman's acts, not one of which has gone too far in recognizing the rights of woman in her person and property. But there is still an excellent reason why a woman should not be allowed to choose her own residence in another state or county from that of her husband without at least having grounds for legal separation or divorce from him; or, if she is to be given that right, then the husband's right in that regard should be made subservient to her wish in order that the home, the foundation of society, may have a local habitation, without which it is but a name, and meaningless at that. Either the husband or the wife must have the final say in the matter of where their home is to be; and, so long as the husband is burdened with the responsibility of feeding and clothing the family, the wife, and children, that very responsibility ought to carry with it the authority to determine the location where his toil will earn its best reward for their benefit. No statute ought to repeal the laws of nature. Man, by reason of his superior physical

strength and the fact that he does not bear the children, must ever be one to bear arms in war, and upon him must always fall the responsibility of providing for the family. The burden of his responsibility is the secret of his authority. And the Legislature has not intended to go so far as to say that he shall be responsible for the care and maintenance of one who owes him no allegiance whatever. If, in addition to all her conceded rights, woman may now select her own home and domicile, it is hard to see where she has a single duty to perform for the one who becomes a disorderly person, under the Penal Code, the moment he neglects or refuses to earn her living for her by the sweat of his brow. If we have emancipated woman to the extent claimed by the executors herein, the process of emancipating man ought now to begin. A careful·examination of the various married woman's acts will disclose that the sanctity and unity of the home has never been invaded.

There is no evidence in this case that Mrs. Phelps had any grounds for a separation or a divorce. She and Mr. Phelps had lived together as man and wife for many years. They were old people. They had had their differences, and it is conceded that up to within 43 days of Mrs. Phelps' death they had managed to live together as man and wife in spite of them. It is hard to believe that Mrs. Phelps in her old age and in her last sickness ever intended to leave her husband because of weaknesses she had endured so long. The evidence shows his weakness for drink, and his insistence that gin would cure all her ills as it had cured his. But there is no evidence of any serious breach between Mr. and Mrs. Phelps, or of any cause for a breaking up of the family. I maintain that under those circumstances she could not have acquired a separate legal residence from him, even assuming that she intended so to do. Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; O'Dea v. O'Dea, 101 N. Y. 36, 4 N. E. 110; Jones v. Jones, 8 Misc. Rep. 662, 30 N. Y. Supp. 177; Atherton v. Atherton, 155 N. Y. 129, 49 N. E. 933, 40 L. R. A. 291, 63 Am. St. Rep. 650; Hammond v. Hammond, 103 App. Div. 437, 93 N. Y. Supp. 1.

On the question of Mrs. Phelps' intention as to residence, the evidence is conflicting. I think the weight of the evidence is in favor of the contention that she did not intend to change her residence from Pennsylvania to Jamestown, and so I find. At least, there is enough conflict to bring the case within the rule that, where there are conflicting declarations of a change of residence, then the residence must be considered to remain unchanged. Plant v. Harrison, 36 Misc. Rep. 649, 74 N. Y. Supp. 411.

The division of the estate of the testatrix, therefore, must be made on the basis that she was a resident of the state of Pennsylvania at the time of her death; and a decree may be prepared accordingly by the executors. Costs and disbursements will be taxed and allowed when decree is ready, and an opportunity will be given the various interests to be heard on the question of costs.