SAPERSTONE v. SAPERSTONE.

(Supreme Court, Equity Term, Monroe County. October 30, 1911.)

1. Divorce (§ 326*)—Foreign Rabbinical Divorce—Recognition in New York.

A foreign rabbinical divorce will be recognized in New York, if a legal and valid document.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

2. Domicile (§ 5*)—Husband and Wife—Acquisition of New Domicile.

While under ordinary circumstances the domicile of the husband is prima facie the domicile of the wife, yet where a wife left her home in Europe, and came to America with the intention of making it her permanent future home, the husband not having been permitted to emigrate because of disease, and the wife, after coming to America, supported herself and ceased all relations between herself and her former husband, she, being of full age, had an absolute right to acquire a new domicile, and her acts were effective for that purpose.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 24–35; Dec. Dig. § 5.*]

3. Divorce (§ 327*)—Rabbinical Divorce—Validity.

Where at the time a rabbinical divorce was granted to defendant by a rabbi residing in Russia, defendant was living in New York, where she had acquired an independent domicile, and did not appear before the rabbi granting the divorce, in Russia, and there was no compliance with certain conditions precedent imposed by him on the delivery of the instrument of divorce to her by the rabbi in New York, to whom defendant applied, the divorce was void, both for failure to perform such conditions and for want of jurisdiction of the Russian rabbi to grant it.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. § 327.*]

Action by David Saperstone against Anna Saperstone to annul a marriage on the ground that at the time it was solemnized defendant had a living husband. Judgment for plaintiff.

Eugene J. Dwyer, for plaintiff.
Norman Rosenberg, for defendant.

CLARK, J. The parties to this action were married in Buffalo, October 8, 1909. It is the contention of plaintiff that prior to the marriage defendant told him that she was a widow. Some time after the marriage plaintiff discovered that his wife was not a widow, but that her first husband was still living in Russia, where defendant had formerly resided. Defendant denied on the trial that she had represented herself to be a widow, but alleged that prior to her marriage to plaintiff she told him she had a divorce from her first husband, which last statement plaintiff disputed.

On the trial defendant offered in evidence a paper which she claimed was a Jewish divorce, which had been sent by a Jewish rabbi residing in Odessa, Russia, prior to her marriage to plaintiff, and consequently her marriage to plaintiff was legal. The evidence discloses the fact that about eight years prior to the trial of this action defendant was married in Russia, and between four and five years ago she and her

Russian husband started for America, intending to make this country their future home and domicile. When they arrived at Rotterdam, and were about to board ship for New York, the husband was turned back because of some disease with which he was afflicted, and he thereupon returned to Odessa; the defendant proceeding to Buffalo, where she resided up to the time of her marriage to plaintiff. When defendant and her Russian husband separated in Rotterdam, it was understood between them that the separation was to be permanent in its character. She intending to make America her future home, her relations with the former husband thereupon ceased, and she supported herself in Buffalo, and resided there until her marriage to plaintiff.

In 1907 defendant called on a Jewish rabbi (Rabbi Franklin) residing in Buffalo, and asked him to get her a divorce from her husband, who she stated was living in Odessa, Russia, requesting the rabbi in Buffalo to write to Chief Rabbi Frankel, of Odessa, for that purpose. Rabbi Franklin, of Buffalo, wrote to the rabbi at Odessa, as defendant had requested, and in due time received from him a paper which defendant alleges is her divorce. At the same time the rabbi in Odessa notified the rabbi in Buffalo, in writing, that before the woman (this defendant) should receive the so-called divorce a paper should be written in Russian to the effect that the woman received the paper from her husband, and stating the name of her father and her age. The Buffalo rabbi was also instructed to sign the paper and affix the seal, and that the woman should sign her name, both signatures to be certified by a notary public, and that if she failed to sign her name as requested she should not be given the so-called divorce.

It appears that when this paper, called the Russian divorce, was written by the rabbi in Odessa, defendant's first husband was present before him; but this defendant was not in Russia, and consequently did not appear before the rabbi when that proceeding was going on. When this paper, Exhibit 4, claimed by defendant to be her Russian divorce, reached the rabbi in Buffalo, it remained in his possession several months, but none of the formalities or conditions pointed out by the rabbi in Odessa, which he required to be observed before the paper was delivered to defendant, were complied with; but Rabbi Franklin, of Buffalo, on or about the 25th day of August, 1909, executed and delivered to defendant a document reciting the fact that 90 days after that date she or her former husband could remarry, if they received permission or privilege from the government of the United States, meaning I suppose that she could remarry when she procured a divorce according to the laws of this state. At the same time Rabbi Franklin told defendant that the paper which came from Russia was not a divorce, but was merely a separation paper, and would not give her the right to remarry unless she became divorced according to the laws of this country.

Defendant did not have a divorce before she left Russia, and the only question to be determined here is whether or not the paper sent by the rabbi of Odessa is a valid divorce. If it is, defendant's marriage to plaintiff is legal. If, however, it was not a legal divorce,

plaintiff would be entitled to a decree annulling his marriage to defendant because of her having a living husband in Russia at the time her marriage to plaintiff was consummated. I think the paper relied upon by defendant as a Russian divorce is not a legal and valid document for two reasons: First, because the conditions pointed out by the rabbi in Odessa to be observed before the document was delivered to defendant were not complied with; second, because at the time that document was issued defendant was not within the jurisdiction of the rabbi of Odessa, her residence and domicile were in Buffalo, and she was in that city at the time, and the rabbi in Odessa had no jurisdiction in the premises.

[1] It is well settled that a foreign rabbinical divorce will be recognized in this state, provided, of course, it is a legal and valid document. Leshinsky v. Leshinsky, 5 Misc. Rep. 495, 25 N. Y. Supp. 841; Miller v. Miller, 70 Misc. Rep. 368, 128 N. Y. Supp. 787. These cases are both cited by the learned counsel for defendant to sustain his contention that Exhibit 4 is a valid rabbinical divorce and effectual in this state. The above cases, however, are readily distinguishable from the case at bar, for the reason that in those cases the parties resided and had their domicile in Russia, not only at the time the marriages were consummated, but at the time the divorces were granted; and in the case of Miller v. Miller, supra, the Russian divorce relied upon was granted by a Jewish rabbi when both parties were personally before him, he delivering to each a duplicate thereof. The case at bar is very different, for here defendant and her husband had separated permanently. He returned to Odessa, and she continued her journey to Buffalo, always maintained herself thereafter, and intended to abandon her Russian home and make America her permanent home and domicile.

[2] Under ordinary circumstances the domicile of the husband is prima facie the domicile of the wife. Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129. Under the circumstances as disclosed by the evidence in this case I do not think that rule would apply; for when defendant came to America with the intention of making this her future home, and when she had supported herself, and all relations between her and her former husband had ceased, she had a right to and did acquire a residence and domicile here, even though her husband was not permitted to come to America, and her intention to make her domicile here was never changed up to the time of her marriage to this plaintiff. She was of full age and of sound mind, and was not under any restraint, and it was her absolute right to change her domicile, for she was no longer living with her former husband. Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950; Story's Conflict of Laws (7th Ed.) § 46; Rundle v. Van Inwegan, 9 Civ. Proc. R. 328; Matter of Florance, 54 Hun, 328, 7 N. Y. Supp. 578.

[3] If defendant had been in Russia and under the jurisdiction of the Jewish rabbi in Odessa, when the paper claimed by her to be a divorce was issued, or if the conditions mentioned by the rabbi in Russia to be complied with before the document was delivered had been complied with, it would probably be sustained here as a divorce on the

ground of comity. 3 Am. & Eng. Enc. of Law, 503. But at the time that document was issued defendant's legal domicile was in this state, and the rabbi in Russia was without jurisdiction; and, even if he had jurisdiction, the conditions pointed out by him should have been complied with, for they were essential before the document would be deemed a legal and valid rabbinical divorce.

The question of good faith of the parties can scarcely enter into the disposition of this matter, for it all hinges on the question whether or not the so-called Jewish divorce sent by the rabbi in Odessa was valid. I am compelled to hold that it was not, because the conditions pointed out by the rabbi in Odessa were never complied with, and it was necessary that they should be before the document could be deemed to have been legally executed. Moreover, the defendant's. legal domicile having been in Buffalo at the time the so-called Odessa divorce was granted, the rabbi in that city had no jurisdiction to grant a divorce effectual in this country against a person having a residence and domicile in the state of. New York. It would seem that the only valid rabbinical decree granted to defendant was Exhibit 1, issued by Rabbi Franklin of Buffalo, and that was merely a bill of separation, but left defendant still the wife of her Russian husband, and she was such at the time of her marriage to the plaintiff, and, there being no dispute about the fact that at that time her Russian husband was still living, her marriage to plaintiff was illegal, and he is entitled to the relief demanded in the complaint.

Judgment is therefore granted in favor of plaintiff, to the effect that his marriage to defendant be annulled and declared void, but without costs. Findings may be submitted, and judgment entered accordingly.

