# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

MAY TERM, 1913.

---

EDWIN ROBERT WALKER, ORDINARY

---

In the matter of the last will and testament of ANNA S. GEISER, deceased.

[Decided July 7th, 1913.]

1. The power of the prerogative court to admit to probate a will rests exclusively on the fact that decedent was domiciled in the state at the time of his death, otherwise probate must be denied.

2. The domicile of a wife merges into that of the husband, and the unity of domicile exists during coverture unless the wife actually acquires a new domicile by the consent of the husband, or a constructive one, as manifested by acquiescence, abandonment, or conduct so inimical to co-habitation as will secure to the wife a divorce.

3. A woman of considerable means married in Pennsylvania a man of very limited means. The man's domicile continued in Pennsylvania. Throughout their marriage she maintained herself and contributed to the support of her husband. She had no legal grounds for separating from her husband, and did not attempt to do so, but cohabited with him at his domicile in Pennsylvania up to within less than a month before her death, except when away in search of health. She declared that she

311

regarded a city in New Jersey as her domicile.—*Held*, not to show that she was domiciled in New Jersey, and the prerogative court was without jurisdiction to admit her will to probate.

---

On petition for probate of will.

*Mr. August C. Streitwolf, Jr.,* and *Mr. Robert M. Boyd, Jr.,* for the proponent.

*Mr. John S. Westcott* and *Mr. Ulysses G. Styron,* for the caveators.

WALKER, ORDINARY.

Anna. S. Geiser died in Atlantic City, leaving a last will and testatment, which is now offered for probate. She left personal property in this state to be administered. Frederick Geiser, her husband, protests against its probate on the grounds—*first,* that the testatrix was not domiciled in this state, and *second,* because of undue, influence. Much testimony was taken, but none of consequence, to establish testamentary restraint, and that ground was abandoned at the hearing.

In the case of *In re Chadwick's Will, 80 N. J. Eq. (10 Buch.) 168,* although dubious, I felt bound to follow the decision of Vice-Ordinary Reed in *Bracher's Case, 60 N. J. Eq. (15 Dick.) 350,* and held that "Mrs. Chadwick had property in Hudson county, in this state, and therefore her will could be probated here without having been proved at the place of her domicile, according to the practice of this court as established by its decisions."

The court of errors and appeals, in affirming the decree in that case (*80 N. J. Eq. (10 Buch.) 471*), dissented from so much of the opinion as held that the prerogative court had original jurisdiction of the estate of those of foreign domicile, having property in this state, and expressed the view, concisely stated in the syllabus, that

"Neither the prerogative court, nor any of the surrogates of this state, have general jurisdiction to admit to probate the last will and testament of a non-resident, having a domicile at the date of his death in another state, although decedent leaves property in this state, except as anciliary to a probate by the courts of the locality of such domicile."

Therefore, the power of this court to admit to probate the will in question, must rest exclusively upon the deceased having been domiciled in this state at the time of her death; and if she were not, probate must be denied.

The deceased and the caveator were married in Easton, Pennsylvania, in 1905. The domicile of origin of both the husband and wife was Easton. The husband's domicile has continued to be at that place. It is familiar law that upon marriage the domicile of the wife merges into that of the husband. It is a legal sequence of the nuptial contract, and the unity of domicile exists during coverture, unless the wife acquires one elsewhere by the husband's consent. This consent may be either actual or constructive, and may be manifested by acquiescence, by abandonment, or by such conduct, inimical to cohabitation, as would secure to the wife a decree of divorce *a vinculo* or *mensa et thora*. *14 Cyc. 846, 847*, and cases cited; *Hackettstown Bank* v. *Mitchell, 28 N. J. Law (4 Dutch.) 516; Baldwin* v. *Flagg, 43 N. J. Law (14 Vr.) 495.*

During the hearing the testimony impressed me that the testatrix was not so circumstanced as to empower her, and that she did not attempt, to take up a new domicile in this state. A careful consideration of the evidence has not altered that view.

The deceased was a divorcee and thirteen years older than her second husband. She was a woman of considerable means, while the contrary appears to have been his portion. Throughout the seven years of their married life the deceased maintained herself and contributed to the support of her husband. The marriage was kept a secret for almost a year, and until May, 1906. During that time the couple lived apart, each at their respective homes. In August of that year they took up their home at Mrs. Geiser's. From there they went to the Vandeveer, a boarding-house in Easton, where they remained until November, when they went to California, from whence they returned to Easton in April, 1907, and moved to the Bushkill, where they lived until the following July. The testatrix then went to Atlantic City to meet her two children by her former husband, who came from their home in Ohio to spend the summer with their mother. She returned to Easton in September

and lived with her husband at the Bushkill until the following summer, when she again went to Atlantic City to spend the season with her children. In the fall of 1908, Mrs. Geiser brought an action for divorce in the courts of Pennsylvania, alleging cruel treatment. The suit was soon abandoned, and the domestic relations of the couple were resumed at the Franklin House, a hotel in Easton, and continued there until January, 1909, and at 312 Spring Garden street, for about a month thereafter, when the two went to Florida. Upon their return to Easton, in April, 1909, Mrs. Geiser went to Atlantic City, where she stayed until the following July, then returned to Easton for a short time, and thence to the Spruce Cabin Inn, a resort in Pennsylvania. After a month's stay she went back to Atlantic City. In October, 1909, Mrs. Geiser was seriously ill, and was removed by her husband to Easton, and then to a hospital in Philadelphia, for an operation. From this she recovered sufficiently to return to Atlantic City about Christmas time. After a second operation Mrs. Geiser was removed from Philadelphia to Atlantic City about Easter time of 1910, where she remained continuously, except for a short visit to Easton, until July, 1911. At that time Mr. and Mrs. Geiser returned to Pennsylvania, making their home in various places in and about Easton until December 12th, 1911, when the deceased, accompanied by her husband, went to a sanatorium in Atlantic City, where she died, January 5th, 1912.

Shortly after her marriage Mrs. Geiser began suffering from an ailment, which was progressive in character, and resulted in her death. Search for health accounts for her migrations. Atlantic City seems to have been the haven to which she turned for relief from her sufferings. When not cohabiting with her husband at Easton, Mrs. Geiser was in constant communication with him, either by telephone or by correspondence. Except during the summers of 1907 and 1908, when she was in Atlantic City with her children, he visited her weekly, and evidently as often as his occupation would permit. Most of the time their relations were pleasant and cordial. She was, undoubtedly, jealously fond of him. That he reciprocated her affections but meagrely, and that she resented his lack of atten-

tion and his indifference to assuming household obligations may well be believed. But that she was ever ready to respond to his beckoning and fondled the hope of a change in his disposition, and the anticipation of marital bliss in a home in Easton, is quite as apparent. To this sentiment she often gave expression.

In support of the argument that the deceased was domiciled in this state the proponents point to the failure of the husband to support his wife; her frequent declarations of ill-will towards him; her oft expressed intention to adopt New Jersey as her domicile, in order to circumvent the operation of the intestate laws of Pennsylvania relating to a husband's interest in his wife's estate; the identification card to the Montclair Trust Company giving her address as Atlantic City, and the recital in the trust deed to the trust company, and her declaration to counsel at the time he drew her will, that she was a resident of this state, taken in connection with the testatrix's residence for a greater part of the time within the last two or three years of her life in this state, all as creating a right in the testatrix to select a separate domicile, and as evidence of an actual exercise of that right.

The failure of the husband to support his wife was largely of the testatrix's making. As already pointed out, she was a woman of means, while he was poor, and it is highly improbable that she expected him to maintain her in the manner in which her income made it possible for her to live. That upon occasions the deceased expressed her determination of ·becoming a citizen of New Jersey, I regard as made prospectively and contingently. The card to the trust company was of commercial convenience, as indicating her. then post-office address. The recital in the trust deed is powerless to create a domicile where none existed. Her statement to the scrivener that she regarded Atlantic City as her home and her domicile, was merely a deliverance of a belief of the acquisition of a political status which was without warrant in law, and unsustained by the facts and circumstances as they then existed. Combined, these facts and circumstances did not create a new domicile. *Gillman* v. *Gillman, 52 Me. 165; Hindman's Appeal, 85 Pa. St. 466.*

It is clear that the deceased had no legal grounds for sepa-

| In re Phelan's estate. | 82 Eq. |
|---|---|

rating from her husband, and the evidence is plenary that she did not, in fact, attempt to do so. For it appears that, except when she was away in search of health, she cohabited with him at his domicile in Easton, Pennsylvania, throughout her married life, and up to within less than a month before her demise.

The right in the decedent to sever her matrimonial domicile, and the *factum* of residence, and the *animus manendi*, essential to a domicile in this state, have not been established. *Watkinson* v. *Watkinson*, 68 N. J. Eq. (2 Robb.) 632.

The deceased was not domiciled in this state at the time of her death, and hence this court has no jurisdiction to admit her will to probate.

Probate must be denied, with costs.