José E. Carrero González, Plaintiff and Appellee, *v.* Virginia del Castillo Santos, Defendant and Appellant.

No. 5036. Argued November 21, 1929.—Decided July 24, 1930.

*F. Piñeiro* for appellant. *González Fagundo & González Jr.,* for appellee.

Mr. Justice Hutchison delivered the opinion of the Court.

Defendant, in a suit for divorce, appeals from an order overruling a motion for a change of venue.

The complaint sets forth that plaintiff and his wife are American citizens residing in Puerto Rico for more than five years immediately preceding the date on which the action was commenced. There is no other averment as to the residence of either of the parties.

The motion and affidavits show that defendant was born at Rincón, in the district of Aguadilla, where she has lived ever since; that she is now and has been for more than twelve years a teacher in the public schools at Rincón; that she and her husband were married in Rincón, and lived there until January 1929, when the husband, a lighthouse keeper, was transferred to Culebra; that defendant, under her contract with the Department of Education, was obliged to finish the school year, and that her husband did not invite her to accompany him to Culebra, nor has he invited her to join him. There were no counter affidavits.

The complaint was filed in May, 1929, in the District Court of Humacao. There is nothing to suggest a change of domicile unless it be that the husband was transferred from one lighthouse to another.

Plaintiff alleges as his ground for divorce that more than a year prior to the filing of the complaint, the wife voluntarily and without plaintiff's consent, deserted and abandoned him, without any reason therefor, and since then, without his consent and against his will, she has lived separately with a fixed purpose not to return. The complaint is not verified. Defendant in her affidavit of merit asserts that this averment as to desertion and abandonment is false, that defendant has not at any time failed to fulfill her marital obligations to plaintiff, and that the suit for divorce came as a complete surprise. She states that her husband did not intend that she should violate her contract with the Department of Education, and that he filed the complaint in the district of Humacao for the purpose of depriving her of an opportunity to defend herself.

That the husband and wife lived together in Rincón up to the time of the husband's departure for Culebra is shown by three affidavits. The wife's statement that her husband did not invite her to accompany him to Culebra finds corroboration in the fact that the suit for divorce was commenced shortly after his arrival there upon alleged preexisting grounds.

For the purpose of determining the question of venue, the affidavits in support of the motion, in the absence of counter affidavits, must be taken as true. The case so presented is one of a wife deserted by her husband rather than one of a husband deserted by his wife.

The place where a person actually lives is, prima facie, presumed to be his legal domicile, but actual residence is merely one circumstance and the presumption raised thereby is not conclusive. A domicile when once obtained or acquired is presumed to continue and the burden of proving a change rests on the party alleging it. 19 C. J., page 431, section 66.

Where there is no question of jurisdiction or venue for the purposes of divorce, especially among the earlier deci-

sions, authority is not wanting for the statement that "residence elsewhere may rebut the presumption as to the continuance of the original abode, particularly when it is of such a length or characterized by such circumstances as indicate an intention to adopt the new locality as a domicile." 19 C. J., pages 432, 433, section 67. Even in such cases, "mere residence elsewhere will not rebut the presumption as to continuance, unless it is inconsistent with an intent to return to the original domicile." Id. Id. It was in such a case, *Williamson* v. *Osenton*, 232 U. S. 619, 624, that the Supreme Court of the United States, speaking through Mr. Justice Holmes, in 1914 said:

"The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere—Story on Conflict of Laws, section 43—or, as Mr. Dicey puts it in his admirable book, 'the absence of any present intention of not residing permanently or indefinitely in' the new abode. Conflict of Laws, 2d ed., 111."

In the instant case, a transfer from one lighthouse to another was not "inconsistent with an intent to return to the original domicile." *Carpenter* v. *Carpenter*, 2 Pac. 122. We have no reason to assume that the transfer carried with it an increase in salary, or that living conditions in Culebra are better than in Rincón. If we take judicial notice of the size, geographical location, population, and general characteristics of the island of Culebra, there is less reason to suppose that even a seasoned lighthouse keeper would care to remain there longer than necessary. There is no satisfactory basis for an inference of the *animus manendi* which "raises a change of abode to a change of domicil."

The official transfer, without more, did not effect a change of the husband's domicile. Much less did it operate a transfer of the matrimonial domicile. "A domicile for the purpose of divorce is not a favorite of the law." *Harrison* v. *Harrison*, 84 Atl. 57, 59. A matrimonial domicile, once established, "continues until a new one is acquired; and a new

one cannot be acquired even constructively by a separation by one party from the other with the clear and abiding intention to sever matrimonial relations, even though such separation may be justified." 19 C. J. pp. 26–27, section 36.

From whatever angle the case be viewed, the husband was powerless to draw after him the domicile of the wife so as to deprive her of her right to a change of venue.

In *Champon* v. *Champon*, 40 La. Ann. 28, 31–32, the court said:

"The true meaning of this aphorism, touching the domicile of the wife being that of her husband, is that the domicile of the wife is the domicile that the husband has at his marriage, or provides after marriage for himself and his wife, and which, though he may change at pleasure, it must be one to which the wife is taken or invited, or at least of which she knows, and to which she may go and stay at her will."

In *Harteau* v. *Harteau*, 14 Pick. 181, 185, a pioneer case decided in 1833, the Supreme Judicial Court of Massachusetts, speaking through Mr. Chief Justice Shaw, expressed a thought that has gone forward along the path of progress through a century of conservative judicial opinion. It was this:

"It is probably a juster view, to consider that the maxim is founded upon the theoretic identity of person, and of interest, between husband and wife, as established by law, and the presumption, that from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail. But the law will recognize a wife, as having a separate existence, and separate interests, and separate rights, in those cases where the express object of all proceedings is to show, that the relation itself ought to be dissolved, or so modified as to establish separate interests, and especially a separate domicile and home, bed and board being put, a part for the whole, as expressive of the idea of *home*. Otherwise, the parties in this respect would stand upon very unequal grounds, it being in the power of the husband to change his domicile at will, but not in that of the wife.

"The husband might deprive the wife of the means of enforcing her rights, and in effect of the rights themselves, and of the protec-

tion of the laws of the commonwealth, at the same time that his own misconduct gives her a right to be rescued from his power on account of his own misconduct towards her.   Dean v. Richmond, 5 Pick. 461; Barber v. Root, 10 Mass. R. 260.''

Some thirty years later in *Calvin* v. *Reed,* 55 Pa. 375, 379, the Supreme Court of Pennsylvania said:

''. . . the unity of person created by the marriage is a legal fiction, to be followed for all useful and just purposes, and not to be used to destroy the rights of either, contrary to the principles of natural justice, in proceedings which, from their nature, make them opposite parties.

''It required their mutual consent to establish the relation from which the unity arises; and the same law of right demands them to be viewed in their separate natural condition when either proceeds against the other to destroy this relation.   It is the necessary effect of their being opposite parties in the same proceeding.''

Later in the same opinion we find the following:

''. . . In a proceeding to dissolve a marriage the parties stand upon a level of rights.   When the injured party seeks a new domicil, and the domicils are, therefore, actually different, there is no greater reason why the husband's new domicil should prevail over the wife's, than that hers should prevail over his.   In this aspect justice requires that neither should draw the other within the folds of a foreign jurisdiction.

''If a wife enjoying here the comforts of home, friends and refinement, should refuse to follow the whim or caprice of her husband into western wilds, or to encounter the perils and hardships of a journey to the mines of California, on what principle of that natural justice which regulates interstate law, shall the husband's new abode draw his wife's domicil thither?''

The present status of the law is indicated by the following extract from *Buchholz* v. *Buchholz,* Ann. Cas. 1912 D. 395, 396:

''Where the husband has deserted the wife, or where there has been a mutual abandonment of the marriage relations so that every purpose of marriage is destroyed, the reason for the rule that the husband can fix the family domicile ceases, and the rule ceases, and the wife is then at liberty to establish a separate domicile for all purposes.   Gordon v. Yost, 140 Fed. 79; Watertown v. Greaves, 112

Fed. 183, 50 C.C.A. 172, 56 L.R.A. 865; Shute v. Sargent, 67 N. H. 305, 36 Atl. 282; Matter of Florance, 54 Hun. 328, 7 N.Y.S, 578; 84 Am. St. Rep. 33, 34, note 8.''

The soundness of this view is sustained by the authorities reviewed in the opinion, by the note appended thereto and cases cited, and by the Supreme Court of the United States in *Williamson* v. *Osenton, supra,* wherein it is said that:

''. . . The only reason that could be offered for not recognizing the fact of the plaintiff's actual change, if justified, is the now vanishing fiction of identity of person. But if that fiction does not prevail over the fact in the relation for which the fiction was created there is no reason in the world why it should be given effect in any other. However it may be in England, that in this country a wife in the plaintiff's circumstances may get a different domicil from that of her husband for purposes of divorce is not disputed and is not open to dispute. Haddock v. Haddock, 201 U. S. 562, 571, 572. This she may do without necessity and simply from choice, as the cases show, and the change that is good as against her husband ought to be good as against all. In the later decisions the right to change and the effect of the change are laid down in absolute terms. Gordon v. Yost, 140 Fed. Rep. 79; Watertown v. Greaves, 112 Fed. Rep. 183; Shute v. Sargent, 67 N. H. 305; Buchholz v. Buchholz, 115 Pac. Rep. 88. See Haddock v. Haddock, *supra,* Barber v. Barber, 21 How. 582, 588, 597, 598.''

Unless a different rule is to prevail in Puerto Rico, it follows that when plaintiff herein abandoned his wife, went to Culebra, and brought his action for divorce in Humacao, he forfeited his right to fix the matrimonial domicile, and defendant was free to retain as her own the matrimonial domicile already established in Rincón, and, therefore, was entitled to demand a change of venue.

In *De la Viña* v. *Villareal and Geopano,* 41 Phil. 13, the Supreme Court of the Philippines was unanimous in the view there taken that there is no fundamental difference between the American doctrine and the Spanish Law on the subject. The manner in which this aspect of the question is discussed and dismissed indicates that there was no doubt in

the minds of any member of the court. The pertinent portion of the opinion reads thus:

"Turning to the Spanish authorities, we find that they agree with the American authorities in holding that the maxim or rule that the domicile of the wife follows that of the husband, is not an absolute one. Scaevola, commenting on article 40 of the Civil Code (which is the only legal provision or authority relied upon by the petitioner in this case), says:

" 'Although article 64 of the Law of Civil Procedure provides that the domicile of a married woman, not legally separated from her husband, is that of the latter, yet, when the tacit consent of the husband and other circumstances justify it, for the purposes of determining jurisdiction, the habitual residence of the woman should be considered as her domicile where her right may be exercised in accordance with article 63.'

"Manresa, commenting upon the same article (art. 40) says:

" 'The domicile of married women not legally separated from their husbands shall be that of the latter. This principle, maintained by the Supreme Court in numerous decisions, *was modified* in a particular case by the decision of June 17, 1887, and in conformity with this last decision, three others were afterwards rendered on October 13, 23 and 28, 1899, in all of which it is declared that when married women as well as children subject to parental authority live, with the acquiescence of their husbands or fathers, in a place distinct from where the latter live, they have their own independent domicile, which should be considered in determining jurisdiction in cases of provisional support, guardianship of persons, etc.' (1 Manresa, 223)."

In the *Enciclopedia Jurídica Española,* vol. 12, page 438, we find the following:

"We have understood in Spain that actual separation was sufficient when it was consented to by the husband, contrary to the practice in France and Belgium, etc., where it has been held that both actual and legal separation was required, as shown in a case where the wife was working as a servant in the house of a third person, and the right of the husband prevailed. Where the husband deserts the wife the last conjugal domicile will rule."

Manresa, in the first volume of his commentaries on the

Spanish Code of Civil Procedure, pages 225, 226, and 227, says:

"Domicile is acquired by residence in a place with an established home and the purpose to remain therein. Where this purpose or intention does not appear from a declaration of the interested party or from other positive facts it can be inferred from the fact of holding or having acquired property in that town, or having moved thereto his family and movable property, of having made it the seat of his respective professional, farming or business occupation; in short, from any fact showing that the person in question has definitely established his residence in that locality and given up his former residence. . .

"Now, what is understood by domicile for the purpose of the law? Undoubtedly the place where the defendant habitually resides, with an established home, and exercises therein his profession, art or trade or any other known way of making a living, or lives on his income. Residence in a place under such circumstances for at least six months is sufficient, in accordance with the spirit of section 16 of the aforementioned Municipal Law, to declare it the defendant's domicile, where he might be sued in those cases where the law of domicile applies. However, it must be borne in mind that the domicile is not lost by temporary absence from the place where one lives without the express or presumptive purpose of giving it up. It is necessary that the fact should be accompanied by an express or presumptive will. Any person having a legal domicile in a place and temporarily residing in another can not be considered as domiciled in the latter if he keeps an established home in the former, and there pays his taxes as a resident; but if he neither keeps an established home in the former nor pays taxes as a resident, it is obvious that he has in fact lost his domicile, and his domicile shall be the town of his residence. The law must not cover the frauds usually arising from residing in a place while appearing to be domiciled in another."

Thus it appears that in Spain as well as in the United States the *animus manendi* is an essential element in the acquisition of a new domicile. Plaintiff herein left his family behind, presumably in the house where he lived with his wife and child up to the time of his transfer to Culebra. He is not shown to have acquired nor to possess property in Culebra. At the time of filing his complaint, he had not lived

in Culebra long enough to establish even a presumptive domicile under the Spanish Municipal Law. From the standpoint of the Spanish Law as well as from that of the American decisions, there was no change of domicile.

Article 40 of the Civil Code, in force in Puerto Rico prior to the revision of 1902, reads in part as follows:

"For the enjoyment of rights and the performance of civil obligations the domicile of natural persons is the place of their usual residence, or, in certain cases, that determined by the law of civil procedure."

Article 64 of the former Code of Civil Procedure provided that:

"The domicile of married women not legally separated from their husbands is that of their husbands."

Article 1879 provided, among other things, that:

"The custody of the following persons may be ordered:

"1. A married woman who proposes to institute or has instituted suit for divorce, or who enters a complaint of concubinage against her husband, or who institutes an action for annulment of marriage.

"2. A married woman against whom her husband has instituted suit for divorce, or a complaint of adultery, or an action for the annulment of marriage."

Succeeding articles prescribed the details of procedure to be followed in connection with an application for and the making of such an order. It was in a proceeding of this kind that the Supreme Court of Spain in its decision of June 17, 1887, 62 *Jur. Civ.* 25, held that:

". . . although section 64 of the aforesaid law provides that the domicile of a married woman not legally separated is that of her husband, in view of the circumstances of the present case the fact that her husband consented to her living and residing in Seville since their marriage on the 25th of September, 1866—as it does not appear that he had been opposed thereto—shows that her domicile was in Seville, where in compliance with section 63 he should have brought his action."

In a similar proceeding concerning the custody of minors, the same court in a decision of October 23, 1899, 88 *Jur. Civ.* 153, said that:

". . . although it is a fact that children under patria potestas of their father are considered to have his domicile, this general rule does not apply to the case where it is the father himself who claims his domicile as against that which his children may have acquired with the express authorization of their mother, because then the father who helped to bring about such a situation is bound to acknowledge it, submitting to the domicile of the children that are to be placed under custody, as has been repeatedly decided by the Supreme Court in similar cases, that is to say, the cases of the custody of married women."

Section 40 of the old Civil Code was omitted in the revision of 1902, and the former Code of Civil Procedure was superseded by that of 1904. Section 11 of the present Political Code, reported by a code commission together with the revised Civil Code, and adopted simultaneously therewith by the Insular Legislature in 1902, is now the only statutory provision which deals directly with the question of domicile. It follows:

"Every person has in law a domicile. In determining the place of domicile the following rules are to be observed:

"1. It is the place where one habitually resides when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.

"2. There can only be one domicile.

"3. With respect to the jurisdiction of the courts a domicile can not be lost until another is gained.

"4. The domicile of unemancipated minor children is the same as that of their father, and after his death, of their mother.

"5. The domicile of the wife is presumptively the same as that of the husband.

"6. The domicile of an unmarried minor subject to guardianship is the same as that of his tutor.

"7. Domicile can be changed only by the union of act and intent."

Sections 156, 157, and 158 of the Revised Civil Code read thus:

"Sec. 156. The husband and wife shall live together, and owe to each other mutual fidelity and assistance.

"Sec. 157. The husband shall protect his wife and satisfy her needs in proportion to his condition and fortune.

"Sec. 158. The wife shall obey her husband and follow him wherever he elects to reside."

No part of any one of these sections can be torn from its setting and considered alone. The three must be construed together, each in the light of the others, and all in connection with section 11 of the Political Code, and in the light of the general trend of modern legislation in this island and elsewhere in the United States toward the emancipation of married women. In *Shute* v. *Sargent,* 36 Atl. 282, quoted with approval in *Buchholz* v. *Buchholz, supra,* and in the note thereto, and cited in *Williamson* v. *Osenton, supra,* the Supreme Court of New Hampshire said:

"The maxim that the domicile of the wife follows that of her husband 'results from the general principle that a person who is under the power and authority of another possesses no right to choose a domicile.' Story Conf. Laws, sec. 46. 'By marriage, husband and wife become one person in law,—that is, the very being or legal existence of the wife is suspended during the marriage, or at least is incorporated and consolidated into that of the husband, under whose wing, protection and cover she performs everything.' 1 Bl. Com. 442. Such being the common-law status of the wife, her domicile necessarily followed her husband's, and the maxim applied without limitation or qualification. But the common-law theory of marriage has largely ceased to obtain everywhere, and especially in this state, where the law has long recognized the wife as having a separate existence, and separate rights, and separate interests. In respect to the duties and obligations which arise from the contract of marriage and constitute its object, husband and wife are still, and must continue to be, a legal unit; but so completely has the ancient unity become dissevered and the theory of the wife's servitude superseded by the theory of equality which has been established by the legislation and adjudications of the last half century, that she now stands, almost without an exception, upon an equality with the husband as to property, torts, contracts, and civil rights. Pub. St. c. 176; id. c. 90, s. 9; Seaver v. Adams, 66 N. H. 142, 143 and authorities cited.

And since the law puts her upon an equality, so that he now has no more power and authority over her than she has over him, no reason would seem to remain why she may not acquire a separate domicile for every purpose known to the law. If, however, there are exceptional cases, where for certain purposes it might properly be held otherwise, there can be in this jurisdiction no reason for holding that when the husband has forfeited his marital rights by his misbehavior, the wife may not acquire a separate domicile, and exercise the appertaining rights and duties of citizenship with which married women have become invested. To hold otherwise would not only break the line of consistency and progress which has been steadily advanced until the ancient legal distinctions between the sexes, which were adapted to a condition that has ceased to exist and can never return, have been largely swept away, but it would also be subversive of the statutory right of voting and being elected to office in educational matters which wives now possess (Pub. St. c. 90, s. 9, 14), inasmuch as it would compel the innocent wife to reside and make her home in whatever voting precinct the offending husband might choose to fix his domicile, or suffer the deprivation of the elective franchise; and if he should remove his domicile to another state and she should remain here, the exercise of all her rights dependent upon domicile would be similarly affected. This cannot be the law. On the contrary the good sense of the thing is, that a wife cannot be divested of the right of suffrage, or be deprived of any civil or legal right, by the act of her husband; and so we take the law to be. Whenever it is necessary or proper for her to acquire a separate domicile, she may do so."

If the first requirement of section 158, for instance, is to be literally construed, blindly followed, and strictly enforced, married women in Puerto Rico at the next general election, if instructed by their husbands as to how they shall cast their ballots, must obey their husbands and vote as directed.

The three sections, as a whole, rest upon the same idea of unity in the marriage relation which underlies the common law friction concerning the wife's constructive domicile. Construed in connection with section 11 of the Political Code, they establish nothing beyond the presumptive domicile there defined as that of the wife. The general rule so prescribed is subject to the same exceptions and limitations as in the case

of the common law fiction. The presumption must stand or fall, according to circumstances, when tested by the rule that runs like a thread of gold through a hundred years of American Jurisprudence.

The rights and duties of the two spouses are correlative and reciprocal. The husband who demands that his wife shall follow him wherever he elects to reside must provide a suitable place in which she may live. He must be willing and prepared to "satisfy her needs in proportion to his condition and fortune." He must invite her to accompany him, or at least to join him in his new abode. The law does not demand that a wife shall follow her husband without an invitation and without any reason to believe that she will be welcome.

In the instant case, the wife from the time of her marriage has contributed to the common fund of the conjugal partnership her salary as a teacher in the public schools. There is nothing to show that she would have had an opportunity to contribute in this way or in any other way to the support of herself and child in Culebra. There is nothing to show that the husband was better able or more willing to support his wife and child in Culebra than he was in Rincón. There is nothing to show that he was disposed to furnish transportation for his wife and child from Rincón to Culebra. There is nothing to show that he wanted them to join him in Culebra. On the contrary, it appears that the wife, when served with the summons in the suit for divorce, was obeying her husband by carrying out his intention that she should finish the school year in Rincón. She could not continue thus to obey her husband, and at the same time follow him against his will to Culebra. She was under no obligation, either legal or moral, to resign her position and, like a cur that will not be driven from the heels of an away-going master, to follow her husband from one end of this island to the other and thence across an expanse of water to a lighthouse on that

"narrow strip of sea-girt soil" (assuming with poetic license the existence of soil) called Culebra.

It is familiar law that, as stated in 19 C. J., pp. 418–419, section 39:

"The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur."

The same rule, it has been said, applies to government service in general. 9 R.C.L., p. 551, section 14; *Lankford* v. *Gebhart*, 130 Mo. 621, 32 S. W. 1127.

The reason for the rule (19 C. J. 418–419, section 39, note 95 (*a*)) is that:

"In order to gain either an actual or legal residence, there is, of necessity, involved at least the exercise of volition in its selection, and this cannot be affirmed of the residence of either a soldier or sailor in active service."

In the case at bar, there is nothing to show whether the transfer was involuntary, or sought by the government employee. If voluntary, it was a mere act, without any evidence of the intent expressly required by subdivision 7 of section 11 of. the Political Code. If involuntary, the case comes within the reason for the rule as to soldiers and sailors, and *a fortiori*, there was no change of domicile.

The order appealed from should be reversed.

Mr. Justice Wolf and Mr. Justice Aldrey concur in the judgment.